IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERIC AICHER,

    Plaintiff,

vs.                                                        No. CIV 15-0552 JB/SCY

A. ALI, ACCESS CORRECTIONS,
J. STEWART, and FNU EWING,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court under 28 U.S.C. § 1915(e)(2) and rule 12(b)(6) of the Federal Rules of Civil Procedure, on the Prisoner's Civil Rights Complaint, filed June 29, 2015 (Doc. 1)("Complaint"). Plaintiff Eric Aicher is incarcerated, appears pro se, and is proceeding in forma pauperis. For the reasons set out below, the Court will dismiss some of Aicher's claims.

The Court has the discretion to dismiss an in forma pauperis complaint sua sponte under § 1915(e)(2) "at any time if the action . . . is frivolous or malicious; [or] fails to state a claim upon which relief may be granted." The Court also may dismiss a complaint sua sponte under rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991)(quoting McKinney v. Oklahoma Dep't of Human Services, 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing Aicher's pro se Complaint, the Court applies the same legal standards

applicable to pleadings that counsel drafts, but liberally construes the allegations. See Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992).

The Complaint alleges that Aicher ordered and paid for an mp3 player, an accessory power cord and prepaid music from Defendant Access Corrections, but these items were never delivered into his possession. See Complaint at 3, 4-8. Aicher contends that Access Corrections' failure to deliver these items violated his right to freedom of speech under the First Amendment to the Constitution of the United States of America, his right to be free from cruel and unusual punishment under the Eighth Amendment to the Constitution of the United States, his right to due process of law under the Fourteenth Amendment to the Constitution of the United States, the Americans with Disabilities Act ("ADA"), the Unfair Practices Act, and that Access Corrections' actions constituted mail fraud. See Complaint at 3. Aicher's Complaint also asserts claims against Defendants A. Ali and FNU Ewing, property officers at Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico, for violation of Aicher's First, Eighth, and Fourteenth Amendment rights, as well as for negligence and theft. See Complaint at 12. Lastly, Aicher's Complaint alleges that Defendant J. Stewart, CNMCF's Warden, is liable for the violation of Aicher's constitutional rights, because he did "not oversee[] what his property officer and mail room clerks were doing" and negligently failed to do "his job as warden to over see this issue, but ignore[d] it." Complaint at 12. Aicher further alleges that Stewart violated the ADA because he knew Aicher "was in Geriatrics with Alzheimers." Complaint at 12. Aicher's Complaint seeks declaratory and injunctive relief, as well as compensatory and punitive damages. See Complaint at 14.

After filing his Complaint, Aicher submitted various Inmate Purchase Orders and commissary receipts, see Inmate Purchase Order, filed August 14, 2015 (Doc. 8)("Inmate

Purchase Order"), as well as a Letter from Scott L. Henderson, classification officer at Lea County Correctional Facility in Hobbs, New Mexico (dated Aug. 17, 2015), filed August 24, 2015 (Doc. 10)("Henderson Letter"), to support his claims.  Additionally, on September 14, 2015, Aicher filed an Amended Prayer for Relief, requesting compensatory damages in the amount of $380.00 to reimburse a fellow inmate for the use of his mp3 player over the past year.  See Amended Prayer for Relief, filed September 14, 2015 (Doc. 12)("Amended Prayer for Relief").  The Court construes these filings as supplements to the original Civil Rights Complaint.

The Eighth Amendment requires prison officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998).  "To prevail on a conditions of confinement claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is sufficiently serious to implicate constitutional protection, and (2) prison officials acted with deliberate indifference to inmate health or safety."  DeSpain v. Uphoff, 264 F.3d 965, 971 (10th Cir. 2001)(internal quotation marks and citation omitted).  "In order to satisfy the first requirement, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  DeSpain v. Uphoff, 264 F.3d at 971 (internal quotation marks and citation omitted).  To satisfy the second requirement that DeSpain v. Uphoff sets forth, "the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  Martinez v. Beggs, 563 F.3d 1082, 1089 (10th Cir. 2009).

Aicher's Complaint does not allege that Aicher was deprived of the basic necessities of life, or that the Defendants' alleged failure to deliver the mp3 player, accessory power cord, and

prepaid music posed a substantial risk of harm.  See <u>Barney v. Pulsipher</u>, 143 F.3d at 1311 ("The Eighth Amendment does not mandate comfortable prisons, and conditions imposed may be restrictive and even harsh.")(internal quotation marks and citation omitted).  Furthermore, Aicher's Complaint does not allege that the Defendants were aware of a substantial risk of harm to Aicher and were deliberately indifferent to this known risk.

> Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights.

<u>Verdecia v. Adams</u>, 327 F.3d 1171, 1175 (10th Cir. 2003)(internal quotation marks and citation omitted).  Accordingly, the Court will dismiss Aicher's Eighth Amendment claim.

<u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), and <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), <u>overruled on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327 (1986), govern Aicher's Fourteenth Amendment due-process claim against Ali and Ewing.  In <u>Hudson v. Palmer</u>, the Supreme Court of the United States held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  468 U.S. at 533.  This reality is because, "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." <u>Hudson v. Palmer</u>, 468 U.S. at 533.  Thus, pursuant to <u>Hudson v. Palmer</u>, "the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." 468 U.S. at 533.  See <u>Smith v. Colorado Dep't of Corr.</u>, 23 F.3d 339, 340 (10th Cir. 1994)("Fourteenth Amendment due process guarantees pertaining to property are satisfied when

an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees.").

The only postdeprivation remedies under New Mexico law that could conceivably redress the alleged deprivation of Aicher's due-process property rights are N.M. Stat. Ann. § 41-4-12 and N.M. Stat. Ann. § 41-4-6(A). The Court concludes, however, that Aicher's Fourteenth Amendment claim against Ali and Ewing does not fall under either waiver of sovereign immunity. First, Aicher cannot redress the alleged deprivation pursuant to N.M. Stat. Ann. § 41-4-12, which waives sovereign immunity for "property damage resulting from . . . violation of property rights or deprivation of any rights, privileges, or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." N.M. Stat. Ann. § 41-4-12. N.M. Stat. Ann. § 41-4-12, however, only applies to "law enforcement officers," and the Court has previously explained that correctional officers at a state penitentiary are not law enforcement officers under the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 through 41-4-27. Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1255 (D.N.M. 2010)(Browning, J.)(citing Callaway v. N.M. Dep't of Corr., 1994-NMCA-049, ¶¶ 9-12, 875 P.2d 393, 397). Accordingly, because Ali and FNU were property officers at CNMCF, they do not qualify as "law enforcement officers" and Aicher cannot redress the alleged deprivation of his property rights under N.M. Stat. Ann. § 41-4-12.

Second, Aicher cannot redress the alleged deprivation pursuant to N.M. Stat. Ann. § 41-4-6(A), which exempts from immunity "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment, or furnishings." N.M. Stat. Ann. § 41-4-6(A). This exception balances

the principle that "government should not have the duty to do everything that might be done," with the desire "to compensate those injured by the negligence of public employees and to impose duties of reasonable care."  Cobos v. Dona Ana Cty. Hous. Auth., 1998-NMSC-049, ¶ 8, 970 P.2d 1143, 1145 (citations and internal quotations omitted).  The Supreme Court of New Mexico has explained that, "[w]hile [§] 41-4-6 may appropriately be termed a 'premises liability' statute, the liability envisioned by that section is not limited to claims caused by injuries occurring on or off certain 'premises,' as the words 'machinery' and 'equipment' reveal."  Cobos v. Dona Ana Cty. Hous. Auth., 1998-NMSC-049, ¶ 9, 970 P.2d at 1146.  New Mexico courts have found that § 41-4-6's waiver of immunity does not extend to negligent supervision, see Pemberton v. Cordova, 1987-NMCA-020, 734 P.2d 254, 256, negligent design, see Rivera v. King, 1998-NMCA-093, 765 P.2d 1187, negligent inspection, see Martinez v. Kaune, 1987-NMCA-131, 745 P.2d 714, or negligent classification of a prison inmate, see Archibeque v. Moya, 1993-NMSC-079, 866 P.2d 344.

In Archibeque v. Moya, the Supreme Court of New Mexico rejected the plaintiff's assertion that the defendant, a prison intake officer, was participating in the "operation" of the New Mexico State Penitentiary when she classified him as an inmate who could safely be released to the general prison population such that immunity was waived under § 41-4-6.  See 1993-NMSC-079, ¶¶ 2-3, 866 P.2d at 346.  The Supreme Court of New Mexico held that "'[t]he 'operation' and 'maintenance' of the penitentiary premises, as these terms are used in 41-4-6, does not include the security, custody, and classification of inmates. . . .  Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions."  Archibeque v. Moya, 1993-NMSC-079, ¶ 8, 866 P.2d 344 (citations omitted).  The Supreme Court of New Mexico reasoned:

> The purpose of Section 41-4-6 is to ensure the general public's safety by requiring public employees to exercise reasonable care in maintaining and operating the physical premises owned and operated by the government. Moya-Martinez was not operating and maintaining the prison's physical premises when she negligently classified Archibeque as an inmate that could be released into the general prison population. <u>Rather, she was performing an administrative function associated with the operation of the corrections system. Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions. To read Section 41-4-6 as waiving immunity for negligent performance of administrative functions would be contrary to the plain language of the statute</u>.

1993-NMSC-079, ¶ 8, 866 P.2d at 347 (emphasis added). The Supreme Court of New Mexico further explained:

> While Moya-Martinez's misclassification of Archibeque put him at risk, the negligence did not create an unsafe condition on the prison premises as to the general prison population. Reading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the Tort Claims Act, which recognizes that government, acting for the public good, "should not have the duty to do everything that might be done," and limits government liability accordingly. *See* Section 41-4-2(A).

1993-NMSC-079, ¶ 11, 866 P.2d at 348. According to the Supreme Court of New Mexico, to permit a waiver of immunity under § 41-4-6 whenever injury results from a negligently performed administrative task "would undermine the purpose of the Tort Claims Act by subjecting the State to liability for virtually any mistake made during the administration of corrections facilities that results in injury to an inmate." 1993-NMSC-079, ¶ 14, 866 P.2d at 349. The Supreme Court of New Mexico noted that, "[w]hile a segment of the population at risk might justify waiver of immunity under Section 41-4-6, a situation in which a single inmate is put at risk is not comparable." 1993-NMSC-079, ¶ 14 n.3, 866 P.2d at 349 n.3.

Like the defendant in <u>Archibeque v. Moya</u>, Ali and Ewing, both property officers with the CNMCF, were not operating and maintaining the physical premises of the correctional facility where Aicher was detained when they allegedly "were both negligent in th[e] handling of

[Aicher's] property."  Complaint at 12.  Rather, in allegedly being negligent in the handling of Aicher's property, they were performing an administrative function associated with the operations of the corrections system.  Moreover, the alleged negligence with respect to Aicher's property "did not create an unsafe condition on the prison premises as to the general prison population." 1993-NMSC-079, ¶ 11, 866 P.2d at 348.  To permit a waiver of immunity under § 41-4-6 in this case "would undermine the purpose of the Tort Claims Act by subjecting the State to liability for virtually any mistake made during the administration of corrections facilities that results in injury to an inmate."  1993-NMSC-079, ¶ 14, 866 P.2d at 349.  The Court therefore concludes that N.M. Stat. Ann. § 41-4-6(A) would not provide Aicher with a postdeprivation remedy under New Mexico law to redress the alleged deprivation of his due process rights under the Fourteenth Amendment.

In sum, because the Court cannot identify any postdeprivation remedies under New Mexico law -- including under N.M. Stat. Ann. § 41-4-12 and N.M. Stat. Ann. § 41-4-6(A) -- that would provide Aicher with a postdeprivation remedy, the Court concludes that Aicher's Fourteenth Amendment claim against Ali and Ewing survives initial review under § 1915(e)(2) and rule 12(b)(6).  The Court is aware of the United States Court of Appeals' recent unpublished decision in Stengel v. New Mexico Corrections Department, 2016 WL 106013 (10th Cir. 2016)(unpublished).  There, the plaintiff alleged that employees at the Lea County Correctional Facility ("LCCF") violated his due-process rights by illegally confiscating his guitar.  See 2016 WL 106013, at *1.  The Honorable William P. Johnson, United States District Judge for the District of New Mexico, dismissed the plaintiff's due-process claims on the grounds that, under Hudson v. Palmer, the plaintiff had an adequate postdeprivation remedy under New Mexico law pursuant to N.M. Stat. Ann. § 41-4-12 and N.M. Stat. Ann. § 41-4-6(A).  See 2016 WL 106013, at

*1.  The Tenth Circuit affirmed Judge Johnson's dismissal of the plaintiff's due process claims, explaining:

> Next, Stengel asserts that the district court erred in concluding New Mexico's state tort remedies provide a postdeprivation remedy sufficient, under *Hudson*, to foreclose his due process claim.  According to Stengel, New Mexico's remedies are "neither available nor meaningful to an incarcerated uneducated pro se indigent petitioner with limited legal access."   Aplt. Br. 17.
>
> We acknowledge the "unique obstacles" pro se prisoners face in obtaining legal relief.  *Taylor v. Williams*, 528 F.3d 847, 850 (11th Cir. 2008)(quoting *Massaline v. Williams*, 274 Ga. 552, 554 S.E.2d 720, 721 (Ga. 2001)).   Yet Stengel provides no authority suggesting those obstacles render such relief inadequate for purposes of Hudson.   On the contrary, the plaintiff in Hudson -- for whom the Court found the state's postdeprivation remedies adequate -- was a pro se inmate, 468 U.S. at 519-20, 536.   We find no error in the district court's conclusion that Stengel's complaint fails to state a claim.

2016 WL 106013, at *2.   While the Tenth Circuit in Stengel v. New Mexico Corrections Department affirmed Judge Johnson's dismissal of the plaintiff's due-process claims, it did not specifically analyze whether the plaintiff had an adequate postdeprivation remedy under N.M. Stat. Ann. § 41-4-12 and N.M. Stat. Ann. § 41-4-6(A).   Instead, the Tenth Circuit, perhaps because the plaintiff did not raise whether N.M. Stat. Ann. § 41-4-12 and N.M. Stat. Ann. § 41-4-6(A) waived New Mexico's immunity, focused on the plaintiff's argument that New Mexico's remedies are "neither available nor meaningful to an incarcerated uneducated pro se indigent petitioner with limited legal access."   2016 WL 106013, at *2.   It appears that the Tenth Circuit was addressing the hardships and burdens on a pro se litigant rather than on issues of New Mexico state immunity law, because that is the way the pro se plaintiff argued the issue.  Moreover, Stengel v. New Mexico Corrections Department is an unpublished opinion.   The Tenth Circuit has cautioned against citing them, much less relying on them in a different case.   With respect to unpublished opinions, the Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). While the Court must faithfully and respectfully follow Tenth Circuit rulings, it does not think that it should blindly apply Stengel v. New Mexico Corrections Department here, where the is no indication that the Tenth Circuit considered sovereign immunity issues. The Court therefore concludes that Stengel v. New Mexico Corrections Department does not foreclose Aicher's Fourteenth Amendment claim against Ali and Ewing. Accordingly, Aicher's Fourteenth Amendment claim against Ali and Ewing survives initial review under § 1915(e)(2) and rule 12(b)(6).

Access Corrections is a private corporation, and "[u]nder § 1983, liability attaches only to conduct occurring 'under color of law.' Thus, the only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995)(internal quotation marks, citations, and alterations omitted). Aicher's Complaint does not allege that Access Corrections was acting under color of law as a state actor when it failed to deliver Aicher's mp3 player, accessory power cord, or prepaid music. See Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1447 (describing four different tests used to determine whether a private actor's conduct may be fairly attributable to the state under the state action doctrine); Complaint at 3. The Court will therefore dismiss Aicher's constitutional claims against Access Corrections.

Aicher's Complaint also raises a claim against Access Corrections under the ADA, Title II, which provides that "no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by an such public entity."  42 U.S.C. § 12132.  The term "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49."  42 U.S.C. § 12131(1)(A)-(C).  Access Corrections is not a "public entity" as the ADA defines that term and, therefore, Aicher's ADA claim against Access Corrections will be dismissed.  See Phillips v. Tiona, 508 F. App'x 737, 754 (10th Cir. 2013)("Title II of the ADA does not generally apply to private corporations that operate prisons.")(unpublished).  See also Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010)(holding that "a private corporation is not a public entity merely because it contracts with a public entity to provide some service").

   Aicher's Complaint also alleges that Access Corrections committed the crime of mail fraud by taking Aicher's money, but failing to deliver the mp3 player, accessory power cord, and prepaid music to him.  See Complaint at 12.  There is no private right of action for mail fraud, however, under 18 U.S.C. § 1341.  See Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 408 (8th Cir. 1999)(holding that "Congress did not intend to create a private right of action in enacting either the mail fraud or wire fraud statutes"); Ryan v. Ohio Edison Co., 611 F.2d 1170, 1179 (6th Cir. 1979)(holding that "Congress did not intend to create a private right of action for plaintiffs under the Mail Fraud Statute").  Accordingly, Aicher's claim of mail fraud against Access Corrections will be dismissed.

   With Respect to Stewart, it is well established that "[u]nder § 1983, government officials are not vicariously liable for the misconduct of their subordinates" and, therefore, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually

committed the violation.  Instead, . . . the plaintiff must establish a deliberate intentional act by the supervisor to violate constitutional rights." Serna v. Colorado Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006)(internal quotation marks and citations omitted).  To "demonstrate an affirmative link between the supervisor and the violation," the plaintiff must satisfy "three related prongs (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010)(internal quotation marks and citation omitted).  Stewart's alleged failure to oversee his property officers and mail room clerks is insufficient to demonstrate an affirmative link between his own conduct and the alleged constitutional violation.

Aicher's Complaint also contends that Stewart was "negligent in not doing his job as warden to over see this issue," because he ignored Aicher's letters of complaint.  Complaint at 9, 10.  It is well established that "a denial of a grievance, by itself without any connection to the violation of the constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009).  See Sherratt v. Utah Dep't of Corr., 545 F. App'x 744, 747 (10th Cir. 2013)("Denial of a grievance or failure to properly investigate or process grievances, without any connection to the violation of constitutional rights alleged by the plaintiff, is not sufficient to establish personal participation for purposes of a Section 1983 claim.")(unpublished).  Because Aicher's Complaint does not allege that Stewart personally was involved in the alleged constitutional violations, the Court will dismiss the § 1983 claims against him.

Lastly, Plaintiff alleges that Stewart violated the ADA because he knew Aicher "was in Geriatrics with Alzheimers."  Complaint at 12.  "To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from

participation in or denied the benefits of a public entity's services, programs or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." Robertson v. Las Animas Cty. Sheriff's Dep't, 500 F.3d 1185, 1193 (10th Cir. 2007). Aicher's Complaint does not allege that Stewart discriminated against Aicher because of his disability. See Jones v Smith, 109 F. App'x 304, 309 (10th Cir. 2004)(unpublished)(holding that, to state a claim under the ADA, the plaintiff must allege that he was discriminated against "*because of his disability*" (emphasis in original))(unpublished). Stewart's alleged actions "could have been the result of incompetence or personal spite or any other number of reasons, according to Plaintiff's complaint" and, therefore, "Plaintiff has failed to state a disability discrimination claim under the ADA." Jones v Smith, 109 F. App'x at 309. Accordingly, Aicher's ADA claim against Stewart will be dismissed.

Aicher's Unfair Trade Practices Act claim under N.M. Stat. Ann. § 57-12-3, et. seq., against Access Corrections and Aicher's First Amendment claim, Fourteenth Amendment claim, and state law claims for negligence and theft against Ali and Ewing survive initial review under § 1915(e)(2) and rule 12(b)(6) and, therefore, the Court will direct the Clerk to issue notice and waiver of service forms, along with a copy of the Complaint, Inmate Purchase Order, Henderson Letter, Amended Prayer for Relief, and this Order, to these Defendants.

**IT IS ORDERED** that: (i) Plaintiff Eric Aicher's claim of cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States of America is dismissed; (ii) Aicher's due process claim under the Fourteenth Amendment to the Constitution of the United States is dismissed with respect to Defendants Stewart and Access Corrections; (iii) Aicher's § 1983, ADA, and mail fraud claims against Defendant Access Corrections are dismissed; (iv) Aicher's § 1983 and ADA claims against Warden J. Stewart are dismissed and Stewart is dismissed as a party to this action; and (v) the Clerk of the Court is directed to issue

notice and waiver of service forms, with a copy of the Prisoner's Civil Rights Complaint, filed June 29, 2015 (Doc. 1), the Inmate Purchase Order, filed August 14, 2015 (Doc. 8), the Letter from Scott L. Henderson, classification officer at Lea County Correctional Facility in Hobbs, New Mexico (dated Aug. 17, 2015), filed August 24, 2015 (Doc. 10), the Amended Prayer for Relief, filed September 14, 2015 (Doc. 12), and this Order, for: (1) Defendants A. Ali and FNU Ewing at Central New Mexico Correctional Facility, P.O. Drawer 1328, 1525 Morris Road, Los Lunas, New Mexico, 87031-1328; and (2) Defendant Keefe Commissary Network, LLC d/b/a Access Corrections c/o C T Corporation System, 206 S. Coronado Ave, Unit 106B, Espanola, New Mexico, 87532-2972.

                                                                             _____
                                                                             UNITED STATES DISTRICT JUDGE

*Parties:*

Eric Aicher
Hobbs, New Mexico

       *Plaintiff, Pro se*