IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERIC AICHER,

    Plaintiff,

v.                                            Civ. No. 2:15-00552 JB/SCY

ACCESS CORRECTIONS,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on (1) Plaintiff's Motions for Leave to File Amended Complaint (Docs. 77 and 78), filed November 9, 2017; (2) Plaintiff's Motion to Quash Defendant's Motion for Summary Judgment (Doc. 75), filed November 9, 2017; (3) Defendant's Motion to Strike Plaintiff's Unauthorized Surreply (Doc. 88), filed December 15, 2017; (4) Plaintiff's Motion for Summary Judgment (Doc. 58), filed August 23, 2017; and (5) Defendant's *Martinez* Report (Doc. 69) and accompanying Motion for Summary Judgment (Doc. 68), filed October 30, 2017.

These motions all concern Plaintiff's sole remaining claim in this lawsuit, which is a claim under the New Mexico Unfair Practices Act ("NMUPA"), NMSA 1978, § 57-12-3 (1971). United States District Judge James O. Browning referred this matter to me for entry of proposed findings and a recommended disposition. Doc. 4. Having reviewed the submissions of the parties, the record, and the relevant law, I recommend that the Court: (1) deny both of Plaintiff's Motions for Leave to File Amended Complaint (Docs. 77, 78); (2) deny Plaintiff's Motion to Quash (Doc. 75); and (3) grant Defendant's Motion to Strike (Doc. 88). With regard to the summary judgment motions, I recommend that the Court deny Plaintiff's motion (Doc. 58) and grant Defendant's motion for summary judgment (Doc. 68). Specifically, I find that there are no

genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law on the NMUPA claim. Accordingly, I recommend that Plaintiff's complaint be dismissed with prejudice.

I. **Plaintiff's Motions for Leave to File Amended Complaint (Docs. 77, 78)**

After the *Martinez* Report was submitted and the summary judgment motions were briefed, Plaintiff filed two motions seeking leave to file an amended complaint. Docs. 77, 78. Plaintiff did not submit a proposed amended complaint with his motions, as required by this Court's local rules of civil procedure. *See* D.N.M.LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend."). Plaintiff's pro se status does not excuse his obligation to comply with the requirements of the federal and local rules of civil procedure. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (noting that although pro se pleadings are construed liberally, pro se litigants "nevertheless must follow the same rules of procedure that govern other litigants"). Although Defendant's response (Doc. 81) alerted Plaintiff to the requirements of Local Rule 15.1, Plaintiff has not remedied this error by filing a proposed amended complaint. Plaintiff's non-compliance with Local Rule 15.1 is a sufficient basis alone to deny both motions to amend. *See Lopez v. Roark*, 637 F. App'x 520, 521 (10th Cir. 2016) (unpublished) (affirming district court's denial of motion to amend where plaintiff's motion failed to include a proposed amended complaint as required by Local Rule 15.1); *see also Segovia v. Rodriguez*, 2017 WL 4480131, at *4 (D.N.M. Oct. 6, 2017) (Baldock, J.) (denying plaintiff's request to amend complaint due to her failure to comply with Local Rule 15.1).

Furthermore, even if I overlooked Plaintiff's non-compliance with Local Rule 15.1, I still recommend denying both motions to amend. Plaintiff's first motion to amend seeks to add statements that are already part of the record and which I have considered in deciding the

summary judgment motions. *See* Doc. 77 at 2. Therefore, Plaintiff's proposed amendments would be futile. *See Grossman v. Novell, Inc*., 120 F.3d 1112, 1126 (10th Cir. 1997) (stating that the trial court may deny leave to amend where the amendment would be futile). As for the second motion to amend, Plaintiff failed to identify the particular amendments he seeks to make, instead merely indicating that he was not aware "he had to list every point in his claim . . . as the violations were obvious and [] the 'NMUPA' [] covers a wide range of areas that could be violated." *See* Doc. 78 at 1. This explanation is inadequate to apprise the Court of the particular grounds for the proposed amendments. *See Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999) (stating that "a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment"). As the Tenth Circuit has emphasized, district courts are not obligated to "engage in independent research or read the minds of litigants to determine if information justifying an amendment exists." *Id*. at 1187 (internal citation omitted).

Based on the foregoing, I recommend **denying** both of Plaintiff's motions to amend (Docs. 77 and 78).

## II.     Plaintiff's Motion to Quash Defendant's Motion for Summary Judgment (Doc. 75)

In full compliance with the deadlines set forth in the Court's Order for a *Martinez* Report, Defendant filed the Report and its summary judgment motion electronically on October 30, 2017. *See* Docs. 68 and 69. Defendant indicated therein that it mailed these documents to Plaintiff that same day. Doc. 68 at 10; Doc. 69 at 5. Plaintiff has moved to quash Defendant's summary judgment motion on the basis that he did not receive the motion until four days later, November 3, 2017. Doc. 75. Plaintiff claims that this is a violation of the "three day rule." *Id*.

3

I find that Defendant complied with the deadline to serve its motion because Defendant *served* the motion on Plaintiff on October 30, 2017, and the date a document is sent, rather than the date a document is received, determines the date of service. *See* Fed. R. Civ. P. 5(b)(2)(C) ("A paper is served under this rule by: . . . mailing it to the person's last known address—*in which event service is complete upon mailing*.") (emphasis added). The "three day rule" Plaintiff refers to applies *after* service by mail occurs and compensates for time lapses caused by mail delivery delays. Specifically, under Fed. R. Civ. P. 6(d), Plaintiff's response time to the motion was extended by three days because Defendant served its motion by mail. *See id*. ("When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), . . . 3 days are added after the period would otherwise expire. . . ").

Because I find that Defendant properly served its summary judgment motion, I recommend **denying** Plaintiff's motion to quash (Doc. 75).

### III. <u>Defendant's Motion to Strike (Doc. 88)</u>

Defendant's motion for summary judgment was fully briefed on November 28, 2017. *See* Doc. 68 (Defendant's summary judgment motion); Doc. 74 (Plaintiff's response); Doc. 79 (Defendant's reply brief); Doc. 82 (notice of completion of briefing). On December 11, 2017, Plaintiff filed a "Response to Defendant's Reply in support of its Motion for Summary Judgment." Doc. 84. Defendant seeks to strike this filing as an unauthorized surreply. Doc. 88.

I agree with Defendant that Plaintiff's "Response" is actually a surreply, as Plaintiff filed it after briefing was completed on Defendant's summary judgment motion. This Court's local rules provide that the "filing of a surreply requires leave of the Court." D.N.M.LR-Civ. 7.4(b). Plaintiff did not seek leave to file a surreply in violation of this local rule. Further, Plaintiff failed to identify any new arguments or evidence in Defendant's reply brief that would have

4

necessitated the filing of a surreply. I therefore recommend **granting** Defendant's motion and striking Plaintiff's response (Doc. 84). *See Ysais v. N.M. Judicial Standard Comm'n*, 616 F. Supp. 2d 1176, 1184 (D.N.M. Mar. 31, 2009) (Browning, J.) (indicating that the court may "choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court" (citation omitted)).

IV. <u>**Plaintiff's Motion for Summary Judgment (Doc. 58) and Defendant's Motion for Summary Judgment (Doc. 68)**</u>

I now turn to address the merits of Plaintiff's NMUPA claim. In addition to the *Martinez Report* (Doc. 69) Defendant submitted, the parties have filed cross-motions for summary judgment on the NMUPA claim. *See* Doc. 58 (Plaintiff's motion), Doc. 68 (Defendant's motion). Both motions are now fully briefed and ready for ruling.

A. Applicable Legal Standards

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (quotation omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos*

*Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id*.

I liberally construe Plaintiff's filings because he is appearing pro se. Still, a pro se non-movant must "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1180 (10th Cir. 2013). For purposes of summary judgment, a prisoner's pleading is treated as an affidavit if it alleges specific facts based on the prisoner's personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

"When the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison officials (referred to as a *Martinez* report) is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall,* 935 F.2d at 1109 (citing *Martinez v. Aaron,* 570 F.2d 317, 318-19 (10th Cir. 1978) (per curiam); *Gee v. Estes,* 829 F.2d 1005, 1007 (10th Cir. 1987) (per curiam)). The Tenth Circuit has explained that when considering whether summary judgment is appropriate, "[a] *Martinez* report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall*, 935 F.2d at 1111.

**B. Factual Background**[1]

Plaintiff's NMUPA claim stems from his purchase of an mp3 player, accessories, and prepaid music in 2014 from Keefe Commissary Network, LLC d/b/a Access Corrections (hereinafter Keefe or Access Corrections).[2] Clark Aff. ¶¶ 4, 8, Sept. 6, 2017 (Doc. 61, Ex. A). According to the affidavit of John Clark, Keefe's manager of media services since 2011, Keefe has a contract with the New Mexico Corrections Department (NMCD) to provide commissary services at various prison facilities throughout New Mexico. *Id*. ¶¶ 2, 5.

When inmates special order items from Access Corrections' sales catalogue, including mp3 players, Mr. Clark states that the items are delivered to the prison facility to be "cleared" and only after being cleared are they delivered to the inmate by prison officials. *Id*. ¶ 14(a-b). According to Mr. Clark, Access Corrections "does not control the acceptance and distribution of special order items received by the New Mexico Department of Corrections institutional shipping and receiving department." *Id*. ¶ 14(d). Thus, Mr. Clark states that once an item is delivered, Access Corrections no longer has any "control over or access to the item." *Id*. ¶ 14(c). Plaintiff's description of the processing of commissary purchases is aligned with the description

---

[1] In his summary judgment motion, Plaintiff generally asks the Court to "see Court records" for evidence supporting his asserted facts, presumably in reference to the various documents he has filed over the course of this lawsuit. However, it is not the court's function to "scour the record in search of evidence to defeat a motion for summary judgment." *See Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1150 (D.N.M. July 22, 2010) (Kelly, J.) (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996)). Thus, I have considered only those documents that Plaintiff has specifically identified or that were included with his summary judgment briefing. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) *citing to particular parts of materials in the record*. . . ." (emphasis added)).

[2] As the Court has noted in previous orders, Defendant indicates that it has been mistakenly identified in Plaintiff's complaint as Access Corrections. *See* Doc. 59. Its correct name is Keefe Commissary Network, LLC d/b/a Access Corrections, a Missouri limited liability company. *Id*.

Mr. Clark provided in his affidavit. In an interrogatory response filed in a state lawsuit concerning the order at issue here, Plaintiff stated that:

> All inmate mail/purchased property from an approved outside vendor is received in the facility mail room signed for and logged in by mail room staff and then sent onto the property officer to be logged under inmate's name and prison I.D. number, then after processed is distributed to the correct inmate showing proper I.D. and signing for it as received.

Doc. 61, Ex. C.

At the time he placed his order, Plaintiff was an inmate housed at the Central New Mexico Correctional Facility (CNMCF) in Los Lunas. Clark Aff. ¶ 6; *see also* Doc. 8 (purchase order receipts). Mr. Clark represents that Access Corrections processed and shipped Plaintiff's order, including the mp3 player, to CNMCF on September 2, 2014 via FedEx. Clark Aff. ¶ 9. On September 5, 2014, FedEx delivered Plaintiff's order to CNMCF. *Id.* ¶ 10. Once there, a CNMCF official named "A. Ali" signed for the package. *Id*. Mr. Clark claims that Access Corrections has no record of the mp3 player being returned to Access Corrections after Access Corrections delivered it to CNMCF. *Id.* ¶ 11. Further, he states that the mp3 player was connected to the music warden kiosk at CNMCF on September 10, 2014, and several other dates before it was deactivated on or about October 29, 2014. *Id.* ¶ 12. In its summary judgment motion, Defendant also points to Plaintiff's interrogatory response in the state lawsuit, wherein Plaintiff acknowledged delivery of his order. *See* Doc. 61, Ex. C (Plaintiff stating that "[r]ecords show property in question was signed for and received by mail room staff at the CNMCF, but no records show that Plaintiff signed for nor received property in question.").

In his summary judgment motion, Plaintiff asserts that he did not receive his order and he provides the following timeline of events. Plaintiff states that he purchased the mp3 player, accessories, and prepaid music on July 9, 2014. Doc. 58 at 1. He later purchased additional

prepaid music on September 4, 2014. *Id*. at 2. Plaintiff made these purchases using his inmate account at CNMCF. *Id*.; *see also* Doc. 8 (purchase order receipts). On September 11, 2014, Plaintiff was transferred from CNMCF to Lea County Correctional Facility (LCCF). Doc. 58 at 2. Plaintiff states that prior to this transfer, a property officer at CNMCF informed him that ordered items are forwarded to the inmate's new facility if the items are delivered after the inmate's transfer. *Id*. After his transfer to LCCF, Plaintiff continued to purchase prepaid music. *Id*. at 2-3. When months passed by without him receiving the mp3 player, Plaintiff contacted the property officer at LCCF to locate his order. *Id*. at 3. Plaintiff represents that Defendant informed the property officer that the mp3 player had been shipped. *Id*. When he still did not receive the mp3 player, Plaintiff claims that a friend assisted him in trying to locate his ordered items and that he later filed a grievance with the New Mexico Attorney General's Office on February 4, 2015. *Id*. at 3-4. In response to the grievance, Defendant sent Plaintiff a letter on February 12, 2015 letter that stated, in relevant part:

> We show that this order was processed on September 2nd, and shipped to Central NM Correctional Facility with FedEx Tracking number 441374501550. The player arrived at NM Correctional on September 5, 2014, and was signed for by A. Ali at 1525 Morris Road, Los Lunas, NM 87031.
>
> Access Corrections has no record of your player coming back from Central NM Correctional after it was received. We show that the player was connected to the music warden kiosk at Central NM on September 10th, and many, many times after that, until the player was deactivated (remotely) on October 29th, 2014.
>
> Access Corrections provides our customers (facilities) pre-addressed FedEx Call Tags for use in sending product back to Access Corrections at our cost. We have no record of your player being sent back to us, nor do we have any correspondence from Central NM stating that they are sending the player back.

*Id*. at 9.

Plaintiff then sought the assistance of the commissary manager at LCCF and his case manager to locate the mp3 player. *Id*. at 4. While Plaintiff refers generally to "court records" for

9

evidence describing these efforts, he points in particular to an August 17, 2015 letter from Scott Henderson, his classification officer at LCCF. *Id*. at 3, 4. Mr. Henderson stated therein that as of the date of the letter, Plaintiff did not "have the mp3 player nor any songs that he purchased." Doc. 10. Mr. Henderson further indicated that he called Defendant five times regarding the mp3 player and was told they "will look into it and call him back", but never did. *Id*. Mr. Henderson also indicated that a phone operator for Defendant told him that Plaintiff "does not have any claim [sic] his mp3 player was with him." *Id*. Plaintiff also specifically references a June 27, 2016 letter that counsel for Defendant sent him after Plaintiff filed this lawsuit. Doc. 58 at 4; *see* Doc. 29 at 4 (letter from defense counsel stating "we want you to know we are investigating what happened to your MP3 player and music downloads.").

A little over a year after this lawsuit was filed, the New Mexico Corrections Department (NMCD) deposited $494.91 in Plaintiff's inmate account; this amount corresponded to the cost of the mp3 player, accessories, and prepaid music that Plaintiff ordered. Doc. 61, Ex. B. Plaintiff subsequently dismissed his claims against NMCD officials as a result of a settlement he reached with NMCD. *See* Docs. 44, 46.

**C. Law Regarding NMUPA claims**

The New Mexico Unfair Practices Act ("NMUPA") makes unlawful "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." NMSA 1978, § 57-12-3 (1971). The NMUPA defines an "unfair or deceptive trade practice" as

> an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person.

10

Section 57-12-2(D). In relevant part, the statute provides that an unfair or deceptive practice includes "failing to deliver the quality or quantity of goods or services contracted for." Section 57-12-2(D)(17).

New Mexico courts have found that there are three essential elements to a NMUPA claim. *See Hicks v. Eller*, 2012-NMCA-061, ¶ 17, 280 P.3d 304. To prevail on a NMUPA claim, a plaintiff must prove:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Id.* (internal citation omitted); *see Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 965 P.2d 332 ("The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services."). "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 17, 811 P.2d 1308.

**D. Analysis**

Plaintiff moves for summary judgment on his NMUPA claim based on the theory that Defendant violated the NMUPA's requirement to "deliver the quality or quantity of goods or services contracted for" when Plaintiff did not receive his ordered items. *See* § 57-12-2(D)(17). Plaintiff specifically argues that Defendant "made several false and misleading oral statements" to himself and others "promising to deliver the property in question to [him] on several occasions from approx[imately] December 2014 to June 27, 2016." Doc. 58 at 4. Plaintiff further argues

11

that Defendant misrepresented to Plaintiff that his property would be forthcoming even though it knew as early as October 29, 2014 – the date that the mp3 player was remotely deactivated – that someone "had apparently intercepted" Plaintiff's order before it reached him. *Id* at 5. Defendant, on the other hand, argues that it is entitled to summary judgment on the NMUPA claim because the undisputed facts show that Plaintiff's order was shipped and delivered to CNMCF. Doc. 68 at 1. Defendant contends that it fulfilled its obligations and that it made no misleading statements or misrepresentations in connection with the sale and delivery of Plaintiff's order. *Id*. Defendant argues that Plaintiff has failed to proffer admissible evidence of any false or misleading statements concerning the sale, shipment, or delivery of Plaintiff's order to CNMCF. *Id*. at 7-8.

Upon review of the evidence proffered by the parties, I find that Plaintiff has failed to provide any evidence that Defendant failed to deliver Plaintiff's order. The undisputed evidence shows that Plaintiff's order was shipped on September 2, 2014 and delivered to CNMCF on September 5, 2014, where prison staff signed for and accepted the delivery, and that the mp3 player was subsequently used at a CNMCF music kiosk multiple times until October 29, 2014. Plaintiff acknowledges as much, but he nevertheless seeks to hold Defendant accountable under the NMUPA for the fact that the order ultimately did not reach him after Defendant completed its duty of delivering it to CNMCF. Whatever the reason may have been for Plaintiff not receiving the order, Plaintiff has not presented any evidence indicating that Defendant is obligated to ensure that an inmate actually receives the order once it is delivered to the facility and signed for by prison staff. In other words, I find no evidence establishing that Defendant had a duty to ensure that Plaintiff received the mp3 player beyond ensuring that his order was delivered to CNMCF. Nor is there any evidence showing that Defendant had the ability to track or control delivery of the mp3 player once it reached CNMCF.

Because the undisputed evidence shows that the order was delivered to CNMCF, I conclude that Plaintiff is not entitled to relief under the NMUPA on the grounds that Defendant failed to deliver the items Plaintiff purchased. As for Plaintiff's argument that Defendant violated the NMUPA by making false or misleading statements to him, his friends, and prison staff in connection with the order after it was delivered to CNMCF, I find that Plaintiff has failed to present evidence showing that Defendant knowingly made any statements that were false or misleading in nature. *See Stevenson*, 1991-NMSC-051, ¶¶ 11, 18 (trial court erred in instructing jury to find party liable under the UPA for "fail[ing] to deliver the quantity of goods contracted for" alone, without also requiring jury to find that the party had knowingly made any false or misleading statement of any kind in connection with the transaction).

Based on the undisputed facts, I find that Defendant is entitled to judgment as a matter of law on the NMUPA claim. Accordingly, I recommend **denying** Plaintiff's motion for summary judgment and **granting** Defendant's motion for summary judgment on this claim.

## V. Conclusion

Based on the foregoing, I recommend that the Court:

(1) deny Plaintiff's Motion to Amend Complaint (Doc. 77);

(2) deny Plaintiff's Motion for Leave to File Amended Complaint (Doc. 78);

(3) deny Plaintiff's Motion to Quash Defendant's Motion for Summary Judgment (Doc. 75);

(4) grant Defendant's Motion to Strike (Doc. 88);

(5) deny Plaintiff's motion for summary judgment (Doc. 58);

(6) grant Defendant's motion for summary judgment (Doc. 68); and

(7) dismiss Plaintiff's complaint with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**